IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
CANTON, OHIO

| | |
|---|---|
| IN RE: | CASE NO. 15-60272-rk |
| CLAYTON B. SMITH, | ADV. NO. 16-6011-rk |
| Debtor/Plaintiff | JUDGE RUSS KENDIG |
| v. | **DEFENDANT DEMETRIOS PROKOS'S** |
| DEMETRIUS PROKOS, et al., | **MOTION FOR SUMMARY JUDGMENT** |
| Defendants | |

Defendant, Demetrios Prokos ("Prokos"), by and through counsel, respectfully moves this Court, pursuant to Rule 7056(a) of the Federal Rules of Bankruptcy Procedure, for summary judgment dismissing the Plaintiff's Complaint against him on the grounds that there is no genuine dispute as to any material fact and Prokos is entitled to judgment as a matter of law. Grounds for this Motion are more fully set forth in the attached Memorandum in Support.

Respectfully submitted,

/s/ Roger J. Stevenson
Roger J. Stevenson (0014366)
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577
E-mail: rstevenson@ralaw.com
*Attorney for Defendant Demetrios Prokos*

## MEMORANDUM IN SUPPORT

### 1. The Pleadings.

Plaintiff Clayton B. Smith ("Clayton") filed a Chapter 13 bankruptcy petition on February 16, 2015, thereby commencing Case No. 15-60272 in this Court. Clayton is represented by Attorney David A. Mucklow in the Chapter 13 case.

With his Chapter 13 petition, Clayton filed a "Schedule B," on which schedule he listed "Personal Property" which he claimed to own. Under item 25 of the Schedule B form, captioned "automobiles, trucks, trailers and other vehicles and accessories," Clayton entered *"2006 Jaguar Equitable interest on titled vehicle."* When prompted by the form to enter the "Current Value of Debtor's Interest" in said vehicle, Clayton entered *"0.00."* (Docket No. 1, page 11 of 54.)

With his petition, Clayton also filed a "Schedule F," on which schedule he listed "Creditors Holding Unsecured Nonpriority Claims." On that schedule, Clayton entered *"Prokos Rentals, 88 East State St., Athens, OH 45701."* Next to that, he entered *"2014 - trade debt - Prokos provided a car but no title - Prokos claims debtor owes this amount personally."* Clayton checked the box for "disputed" and entered *$8,000* under "amount of claim." (Docket No. 1, page 22 of 54.)

On February 24, 2016, Clayton filed a "Complaint for Willful Violation of the Automatic Stay," thereby commencing Adversary Proceeding No. 16-06011 in this Court. Clayton is not represented by counsel in the Adversary Proceeding. Two defendants are named in the complaint: "Demetrius (sic) Prokos" and "Keller Blackburn." Prokos's first name is actually spelled "Demetrios." Blackburn is the Athens County, Ohio prosecutor.

Prokos filed an Answer to the Complaint on March 25, 2016 (Adv. Docket No. 10). Blackburn filed an Answer to the Complaint on March 28, 2016 (Adv. Docket No. 11).

2

Blackburn filed a Motion to Dismiss on April 18, 2016 (Adv. Docket No. 16) which the Court granted on May 10, 2016 (Adv. Docket No. 17). Prokos is now the only defendant remaining in the Adversary Proceeding.

2.  **Clayton's Complaint.**

In his Complaint, Clayton tells a rambling tale about how Prokos gave him possession of a "*2005 4 door Jag vin #SAJW851A95WE51591*" in October of 2014; how Prokos never gave him "*any of the paperwork*" related to that vehicle; how he drove the vehicle for several months and then parked it at his home in Canton, Ohio; how Prokos filed a complaint against him with the Athens County Prosecutor; how he finally surrendered the vehicle to "*agents of the Athens County prosecutor's office*" on January 21, 2016 "*in exchange for dropping a nationwide arrest warrant*" against him; and how the prosecutor (Blackburn) returned the vehicle to Prokos.

In paragraph 16 of his Complaint, Clayton states that "*Section 362 requires all collection efforts to cease immediately upon the filing of a ... bankruptcy petition.*" In paragraph 18 of his Complaint, Clayton states that the Defendants (Prokos and Blackburn) "*should be found in willful violation of 11 U.S. Code 362.*" That statement is, apparently, based upon Clayton's belief that Prokos's complaining to Prosecutor Blackburn about Clayton's failure to return the vehicle, Blackburn's issuance of an arrest warrant, and/or Blackburn's returning the vehicle to Prokos was a violation of the automatic stay imposed by bankruptcy Code Section 362(a).

3.  **The vehicle.**

For purposes of this motion, Prokos will assume that the vehicle which Clayton attempted to describe in his February 16, 2015 Schedule B, is the same vehicle which Clayton attempted to describe in his February 24, 2016 Complaint. Those descriptions are not consistent with each other, and neither one is entirely accurate. But Clayton did have possession of a certain vehicle,

3

a Jaguar, when he filed his Chapter 13 petition on February 16, 2015. And Clayton surrendered possession of that same vehicle on January 21, 2016. For purposes of this motion, Prokos will simply refer to that vehicle as "the vehicle."

Prokos is the sole shareholder of a Delaware corporation, Pro-Rentals, Inc., which corporation operates a car lot in Athens, Ohio under the trade name "Luxury Auto Wholesale." At all times pertinent hereto, the title to the vehicle was in the name of Luxury Auto Wholesale, and the Ohio Certificate of Title for the vehicle was in the continuous possession of Pro-Rentals, Inc., dba Luxury Auto Wholesale. (See Affidavit of Demetrios Prokos attached hereto.)

### 4. How Clayton came to have possession of the vehicle.

In his Complaint, Clayton alludes to various business dealings he said he had with Prokos, and then implies that Prokos gave him the vehicle as payment for work he had done for Prokos. Clayton admits that he never got any paperwork relating to the vehicle.

Clayton had in fact had business dealings with an Ohio limited liability company of which Prokos was a member - Prokos Rentals, LLC.

Prokos did allow Clayton to take the vehicle from the Luxury Auto Wholesale lot in October of 2014. He did so because Clayton said he wanted to purchase the vehicle but wanted to test drive it first. Prokos believed that Clayton could come up with the necessary funds to purchase the vehicle from Pro-Rentals, Inc., dba Luxury Auto Wholesale.

At that time, neither Prokos, nor Prokos Rentals, LLC, nor Pro-Rentals, Inc. dba Luxury Auto Wholesale, owed any money to Clayton. In fact, Clayton owed money to Prokos Rentals, LLC. On September 12, 2014, Prokos Rentals, LLC had paid Clayton $6,600 in advance for roofing work Clayton had agreed to do on two buildings which Prokos Rentals, LLC owned. That work was supposed to be completed by September 22, 2014. Clayton never did the work

and did not return the $6,600. (This is probably the reason Clayton included a 2014 disputed trade debt to Prokos Rentals for $8,000 on his Schedule F.)

Had Pro-Rentals, Inc., dba Luxury Auto Wholesale, actually owed Clayton for work he had done, Clayton's story (about the vehicle being given to him in payment of a debt owed to him) might make some sense. But Pro-Rentals, Inc., dba Luxury Auto Wholesale owed nothing to Clayton. Clayton owed money to Prokos Rentals, LLC when Clayton took the vehicle off the Luxury Auto lot. (See Affidavit of Demetrios Prokos attached hereto.)

### 5. Clayton's misleading chronology.

In paragraph 12 of his Complaint, Clayton describes a December 24, 2015 telephone call from a Jim Lancing in which Mr. Lancing demanded that Clayton return the vehicle to Prokos. The following paragraph of the Complaint (paragraph 13) begins with this statement: "*The defendant Prokos **then** filed a complaint with the county prosecutor and caused a nationwide warrant to be issued on false information for the capture of [Clayton].*" (emphasis added)

Clayton's implication (via paragraph 12) is that Prokos did not demand the return of the vehicle before December 24, 2015. Clayton's implication (via paragraph 13) is that Prokos did not register a complaint with the Prosecutor before December 24, 2015. Clayton goes on to imply that he would not have surrendered the vehicle to the Prosecutor on January 21, 2016 but for the issuance of the warrant for his arrest, and Clayton implies that that warrant would not have been issued but for an act taken by Prokos in January of 2016.

Why does Clayton do that? Because Clayton wants it to appear that Prokos ***did nothing before the stay*** went into effect (on February 16, 2015) and ***did something after the stay*** went into effect. If he cannot show that Prokos took some action after February 16, 2015, Clayton

5

cannot show that Prokos violated the automatic stay. (Any action taken by the Prosecutor after February 16, 2015 cannot be imputed to Prokos, as Prokos has no control over the Prosecutor.)

In fact, Prokos made several demands upon Clayton for the return of the vehicle before the stay went into effect. And Prokos lodged a complaint with the County Prosecutor well before the stay went into effect.

### 6. Clayton's "equitable interest" in the vehicle.

In paragraph 12 of his Complaint, Clayton says that the vehicle was "*property of a chapter 13 trustee.*" In paragraph 14 of his Complaint, Clayton says that the vehicle "*was protected by the stay and was listed in the ... chapter 13 filing.*" In paragraph 17 of his Complaint, Clayton says that he "*held an equitable interest in the car at all times.*" In paragraph 18 of his Complaint, Clayton says that the vehicle was "*property of the estate.*" In paragraph 19 of his Complaint, Clayton says that "*This Court will find that the debtor has an equitable interest in the*" vehicle.

Why did Clayton use the words "equitable interest" in his Schedule B and in his Complaint? Because he knows that he never had legal title to the vehicle and because he knows that if he had no interest in the vehicle, he could not hope to show that Prokos or Blackburn violated the automatic stay. But repeated claims to have an equitable interest in something do not create an equitable interest in it.

Prokos did not give Clayton an equitable interest in the vehicle. For one thing, Prokos did not own the vehicle; Pro-Rentals, Inc., dba Luxury Auto Wholesale, a licensed motor vehicle dealer, owned the vehicle. Secondly, Clayton implies that Prokos gave him the vehicle in payment of a debt, yet Prokos did not owe any debt to Clayton. Nor did Prokos Rentals, LLC. Nor did Pro-Rentals, Inc., dba Luxury Auto Wholesale. It was Clayton who owed money to

6

Prokos Rentals, LLC. Clayton implies that Prokos gave him the vehicle as payment for work he was supposed to do, yet Clayton did not do any additional work. Thirdly, Prokos did not intend to give Clayton an equitable interest in the vehicle. The only thing Prokos gave Clayton was temporary possession of the vehicle, in anticipation that Clayton might decide to, and be able to, purchase it from Pro-Rentals, Inc., dba Luxury Auto Wholesale. (see attached Affidavit of Demetrios Prokos.)

Fourthly, Clayton could not acquire any interest in the vehicle, equitable or otherwise, without a certificate of title. Ohio law says that no court can recognize any interest in a vehicle claimed by someone who does not have a certificate of title for the vehicle. Section 4505.04 of the Ohio Revised Code, which states, in pertinent part (emphasis added):

> (A) **No person** acquiring a motor vehicle from its owner ... **shall acquire any** right, title, claim, or **interest in or to the motor vehicle until there is issued to the person a certificate of title** to the motor vehicle, ... and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to ... the motor vehicle, for a valuable consideration.
>
> (B) Subject to division (C) of this section, **no court shall recognize the** right, title, claim, or **interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:**
>
> **(1) By a certificate of title,** an assignment of a certificate of title made under section 4505.032 of the Revised Code, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the Revised Code;
>
> (2) By admission in the pleadings or stipulation of the parties;
>
> (3) In an action by a secured party to enforce a security interest perfected under Chapter 1309. of the Revised Code in accordance with division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest.

Clayton never had a certificate of title to the vehicle.

7

7. **The Automatic Stay.**

Section 362(a) of the United States Bankruptcy Code states in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of--
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ...
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ...

Clayton implies that Prokos took some "act to obtain possession of property of the estate." But Prokos took no action after the automatic stay went into effect, and even if he had, it would not have been "to obtain property of the estate," because the **vehicle *was not property of the estate.***

8. **Exceptions to the Automatic Stay.**

Section 362(b) of the United States Bankruptcy Code states in pertinent part:

> (b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay--
>
> (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;...
>
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police and regulatory power,

8

> including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power; ....

Clayton may argue that actions taken by Prosecutor Blackburn with regard to the vehicle can be imputed to Prokos and that Prokos can therefore be found in violation of the automatic stay. Any such argument should fail because: 1) Prokos does not control Prosecutor Blackburn; 2) the vehicle was not property of the estate; and 3) any actions taken by Prosecutor Blackburn were not subject to the automatic stay, as explained in Prosecutor Blackburn's motion to dismiss.

9. **Estoppel**

Clayton claims to have been harmed because a vehicle, which he *voluntarily surrendered* to agents of the Prosecutor, was not returned to him. He did not have a certificate of title for that vehicle. He had no other paperwork related to that vehicle. He had no license plates for that vehicle. He claims no more than an "equitable interest" in that vehicle. And, in sworn statements which he filed in his Chapter 13 case, Clayton said that his "equitable interest" was **worth zero dollars**. And in his Complaint, he says that he told a Mr. Lancing that the vehicle "was in fact property of the Chapter 13 trustee." Clayton should be estopped from complaining about anyone's actions related to a vehicle which he did not own, a vehicle which he could not legally drive, a vehicle which he swore had no value, and a vehicle which he claimed was owned by the Chapter 13 trustee.

9

## 10. Conclusion.

For the foregoing reasons, Clayton's Complaint against Prokos should be dismissed.

                Respectfully submitted,

                /s/ Roger J. Stevenson
                Roger J. Stevenson (0014366)
                rstevenson@ralaw.com
                Roetzel & Andress, LPA
                222 South Main Street
                Akron, OH 44308
                Telephone: 330.376.2700
                Facsimile: 330.376.4577
                *Attorney for Defendant, Demetrios Prokos*

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing was electronically transmitted on June 6, 2016 via the Court's CM/ECF system to the following who are listed on the Court's Electronic Mail Notice List:

- Zachary Lane Saunders    zach.saunders@athenscountyprosecutor.org
- United States Trustee    (Registered address)@usdoj.gov

The following parties were served with the foregoing on June 6, 2016, via regular U.S.

Zachary Lane Saunders, Esq.        Clayton B. Smith
Athens County Prosecutor's Office      6105 Cedar Lane NW
1 South Court Street                    Canton, OH 44708
Athens, OH 45701                       *Plaintiff*
*Attorney for Keller J. Blackburn*

                /s/ Roger J. Stevenson
                Roger J. Stevenson

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
CANTON, OHIO

| | |
|---|---|
| IN RE: | CASE NO. 15-60272-rk |
| CLAYTON B. SMITH, | ADV. NO. 16-6011-rk |
| Debtor/Plaintiff | JUDGE RUSS KENDIG |
| v. | **AFFIDAVIT OF DEFENDANT DEMETRIOS PROKOS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** |
| DEMETRIUS (sic) PROKOS, et al., | |
| Defendants | |

COUNTY OF ATHENS  )
                  ) SS:
STATE OF OHIO     )

I, Demetrios Prokos, being duly sworn, hereby depose and say:

1. I am a defendant in the above-captioned case.

2. I have personal knowledge of the facts set forth herein.

3. I am the sole member of a Ohio limited liability company, Prokos Rentals, LLC. Prokos Rental, LLC owns real estate.

4. On September 12, 2014, Clayton Smith agreed to replace the roofs on two buildings which were owned by Prokos Rentals, LLC. One of those buildings was in Athens, Ohio. The other building was in Logan, Ohio. The work was to be completed by September 22, 2014, at a contract price of $9,900, with $6,600 to be paid up front and the balance to be paid on

completion. On September 12, 2014, Prokos Rentals, LLC gave Clayton Smith $6,600 as an advance payment on the above-described contract for the two roofs. Clayton Smith never completed the work on either of the two buildings.

5. I am the sole shareholder of a Delaware corporation, Pro-Rentals, Inc., which operates a car lot in Athens, Ohio under the trade name "Luxury Auto Wholesale." Pro-Rentals, Inc., dba Luxury Auto Wholesale holds licenses from the Ohio Bureau of Motor Vehicles to sell motor vehicles in Ohio (Permit Nos. MN000624 and UD017398).

6. On December 24, 2013, Pro-Rentals, Inc., doing business as "Luxury Auto Wholesale," took title to a 2005 four door Jaguar motor vehicle with vehicle identification number #SAJW851A95WE51591 (hereinafter referred to as the "Vehicle"). A copy of the Ohio Certificate of Title for the Vehicle is attached hereto as Exhibit A. Pro-Rentals, Inc., dba Luxury Auto Wholesale had continuous possession of the original Certificate of Title from December 24, 2013 through February 16, 2016.

7. On or about October 20, 2014, I installed a dealer's license plate on the Vehicle and allowed Clayton Smith to take the Vehicle from the Luxury Auto Wholesale lot. I allowed Clayton Smith to take the Vehicle because he said he wanted to buy it, but wanted to test drive it first. I believed that Clayton Smith could come up with the necessary funds to purchase the Vehicle from Pro-Rentals, Inc., dba Luxury Auto Wholesale.

8. I did not intend to give Clayton Smith any right, title, or interest in the Vehicle unless and until he paid Pro-Rentals, Inc., dba Luxury Auto Wholesale, a fair price for it. I did not intend to give, and I did not promise to give, Clayton Smith any right, title, or interest in the Vehicle in satisfaction of any debt or in exchange for any work done, or to be done, by him.

9. Under Ohio laws and regulations, a licensed dealer such as Pro-Rentals, Inc., dba

Luxury Auto Wholesale, cannot transfer a motor vehicle out of its inventory except by bona fide sale, and therefore cannot transfer a motor vehicle in satisfaction of any debt.

10. On November 20, 2014, I sent text and email messages to Clayton Smith in which I wrote:

> "Few minutes ago we had a phone conversation and once more you changed to another day for the completion of the Logan Job, you said you will have the rubber roof in Logan Building done this weekend. I agreed to give you this final extension. But because you have established a long history of false promising completion days, I have no other choice but to put you on notice: if rubber roof in Logan is not done when Gary comes to inspect it on Monday I will expect all that I paid you refunded back to me on the same day by 12:00 noon. Please understand that this is the last opportunity that you have for the Logan building before I follow legal advice which is: in order to minimize the losses, I must find someone else to finish the job and file a complaint with Keller Blackburn."

11. On November 24, 2014, I sent a text message to Clayton Smith in which I wrote:

"I didn't realize earlier but taking a car without pay as agreed can be a grant theft."

12. On November 24, 2014, I sent a text message to Clayton Smith in which I wrote:

"Applying for permit after the final deadline. It only proves that you never intended to finish the job as you wrote in your contract. I will not go back and forth with you anymore. I just wanted my job to be done or my money and my car back by noon today."

13. On December 2, 2014, I received a text message from Clayton Smith in which he wrote:

"I got your voice mail message however because you have started a criminal action I cannot communicate directly with you."

14. On December 2, 2014, I sent a text message to Clayton Smith in which I wrote:

"Friday I am meeting with another contractor and I am planning to have him do the work that I have paid you to do. That's why we need to meet in the morning to finalize our position before I award him the jobs."

15. On December 6, 2014, Clayton Smith and I exchanged the following text messages:

3

*Prokos to Smith*: "We have a major roof leak in Logan. Even more now than ever. The ceiling is falling in and floor is totaled."

*Smith to Prokos*: "I can handle that there is no criminal report I just don't want to get into a situation where I come to town to get arrested. Did you file a criminal report?"

*Prokos to Smith*: "What is your problem? Send your people then."

*Smith to Prokos*: "You didn't answer the question. I don't want to find myself getting arrested. The permit should be issued on Wednesday."

*Prokos to Smith*: "We have hundreds of gallons of water leaked from the roof and we cannot stop it. If that continues the building will be total loss. You have to do something now. This is emergency no permits needed."

*Smith to Prokos*: "Do I have a problem with the prosecutor?"

*Prokos to Smith*: "I don't know .. Do you?

*Smith to Prokos*: "You were the one who filed it, I didn't. You still didn't answer the question. What's the current situation in Logan?"

*Prokos to Smith*: "Our deal and contract was for you and your company to install new rubber roof by September 22 2014. No place in the contract indicated that I had to answer your questions about your fears with the law. For now I just worry about losing the building. You asked what is the current situation with the building. What part you don't understand? The roof leaks very bad we got a lot of water in the building, floors and ceilings are getting destroyed!"

*Smith to Prokos*: "Ok that answered my question. The roof will have to be removed. Mold removed as well."

16. On December 22, 2014, I sent a text message to Clayton Smith in which I wrote:

"Again I am asking you to immediately return all the money that I paid you along with the vehicle that you have taken from me under false pretenses."

17. Clayton Smith never returned the Vehicle to me or Pro-Rentals Inc. /Luxury Auto Wholesale.

18. The first time I reported to the Athens County Prosecutor about Clayton Smith not returning the Vehicle was in November of 2014.

19. On February 16, 2015, Clayton Smith filed a Chapter 13 bankruptcy petition.

4

20. On January 19, 2016, the Vehicle was returned to the Luxury Auto Wholesale by agents of the Athens County Prosecutor.

21. On February 16, 2016, 2016, Pro-Rentals, Inc., dba Luxury Auto Wholesale, sold the Vehicle for $5,000.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Demetrios Prokos

Sworn to before me and subscribed in my presence this 31st day of June, 2016.

_____
Notary Public   MY COMMISION EXPIRES 11-12-18

5

# OHIO CERTIFICATE OF TITLE

**ISSUING CNTY** ATHENS
**RESIDENT CNTY** ATHENS

**STATE OF OHIO**
ORIGINAL

**No.** 05 0057 0115

**ISSUE DATE** 12/24/2013

**IDENTIFICATION NUMBER:** SAJW851A95WE51591
**COMMENTS:**
**PURCHASE PRICE:** $.00
**CONVERSION**
**MLG BRAND:** ACTUAL

**YEAR:** 2005 **MAKE:** JAGU **MAKE DESCRIPTION:** JAGUAR
**BODY TYPE:** 4D **MODEL:** -- **MODEL DESCRIPTION:** X TYPE
**EXEMPT:** RN **MILEAGE:** 109,485 **EVIDENCE:** OH 0500569447

**BRAND(S)**

**OWNER**
LUXURY AUTO WHOLESALE

9 STIMSON AVE
ATHENS, OH 45701-0000

05019130   UD017398

**PREVIOUS OWNER**
LUXURY AUTO WHOLESALE

9 W STIMSON AVE
ATHENS, OH 45701-0000

05019130   MN000624

**LIEN DISCHARGE**
Lienholder _____
by: _____ Authorized signature _____ date
**CLERK LIEN CANCELLATION**
by: _____ Deputy Clerk _____ date

**LIEN DISCHARGE**
Lienholder _____
by: _____ Authorized signature _____ date
**CLERK LIEN CANCELLATION**
by: _____ Deputy Clerk _____ date

WITNESS MY HAND AND OFFICIAL SEAL THIS 24th DAY OF DECEMBER, 2013

%117610100

*%117610100*

ANN C. TROUT
CLERK OF COURTS

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

BMV 3800 Rev. 3/12

EXHIBIT A